E7gWmorC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   KATHERINE MORENO and AARON
     DUMAS,
 4
                     Plaintiffs,
 5
                 v.                          13 CV 5708 (GBD)
 6

 7   SONY CORPORATION OF AMERICA,
     et al.,
 8
                     Defendants.
 9
     ------------------------------x
10                                     New York, N.Y.
                                       July 16, 2014
11                                     11:45 a.m.

12   Before:

13                   HON. GEORGE B. DANIELS,

14                                       District Judge

15                          APPEARANCES

16
     LEEDS BROWN LAW PC
17        Attorneys for Plaintiffs
     BY:  DANIEL H. MARKOWITZ
18        -and-
     VIRGINIA & AMBINDER, LLP
19   BY:  LADONNA MARIE LUSHER

20   PROSKAUER ROSE LLP
          Attorney for Defendant
21   BY:  MARK W. BATTEN

22

23

24

25
```

E7gWmorC

1              (Case called)

2              MS. LUSHER:  Good morning, your Honor.  Donna Lusher,

3    Virginia & Ambinder.  I have with me Dan Markowitz of Leeds

4    Brown Law.

5              THE COURT:  Good morning.

6              MR. BATTEN:  Good morning, your Honor.  Mark Batten

7    from Proskauer, for the defendants.

8              THE COURT:  Good morning.  Let me hear the plaintiff

9    on their motion with regard to the class.

10             MS. LUSHER:  Yes.  Good morning, your Honor.  We

11   brought this motion for a collective certification under the

12   Fair Labor Standards Act.  Plaintiffs feel that they have met

13   their low burden to send out simply court-authorized notices to

14   individuals that performed internships for SONY and were not

15   paid during the last three-year period.  Actually, the class

16   should go back to August 15, 2010, which is the date that we

17   started this case.  We feel that we've put forth sufficient

18   evidence to show that there was a common policy and plan to

19   misclassify interns as exempt from the Fair Labor Standards

20   Act, to not pay them, and to require them to perform the work

21   of paid employees in their departments.

22             THE COURT:  I understand that in the abstract, but I'm

23   not sure I understand what you claim the policy was.  I don't

24   have many specifics.  That's sort of a boilerplate, well, they

25   decided to hire people instead of hiring employees.  What do

E7gWmorC

1    you say is the policy that you can demonstrate this?

2              MS. LUSHER:  We're saying that they had a common

3    policy, they automatically misclassified unpaid interns.

4              THE COURT:  How?  What was the policy?

5              MS. LUSHER:  The policy was if you were going to

6    perform an internship at SONY, you just weren't paid regardless

7    of the location that you worked  at.

8              THE COURT:  I know, but that's not a policy to avoid

9    the labor law.  That doesn't tell me anything.  Whose job do

10   you say they were doing and in what way were they being

11   utilized to do a specific job?  As I say, I'm looking at it and

12   I have a handful of people who say they worked around the

13   country and I have statements like, well, they asked me to do

14   copying.  That's not going to make it.  You can't just say

15   because I was an intern and they asked me to do copying, then

16   I've established that I'm under a policy in which I'm an

17   employee and I deserve to be paid.  The facts that are alleged

18   right now don't give me any common pattern at all, for me to

19   see, that's either alleged by the affidavit at this point or

20   what you say.  For example, you're not, obviously, saying that

21   you have some evidence that there are some statements or

22   documents that indicate that these interns were really taking

23   the jobs of other employees.  You don't have a smoking gun.

24   You don't define a job and say, well, this is the job that

25   exists and there's evidence here that an intern job description

4

E7gWmorC

1   is the job description of this employee.  I'm not quite sure

2   what common pattern you say at this stage of the proceeding has

3   been demonstrated to show that the intern who works in

4   California and the intern who works in New York are somehow

5   paid employees of a position that is a paid position at the

6   company.  I need a little more specifics as to what you claim

7   the proof is going to show.

8           MS. LUSHER:  Sure, your Honor.  I mean, I can direct

9   you specifically to the reply affirmation, which actually does

10  contain evaluations that were done by supervisors for SONY on

11  interns.

12          THE COURT:  I've read that.

13          MS. LUSHER:  And they talk about how the interns

14  helped out because the departments were understaffed.

15          THE COURT:  Okay.  But that's not legally a pattern or

16  practice of hiring employees and not paying them, because they

17  say they were understaffed.

18          MS. LUSHER:  There are documents in there that talk

19  about that.

20          THE COURT:  So assume they were understaffed.  What

21  does that prove?

22          MS. LUSHER:  That these employees were performing the

23  work that paid employees were performing.

24          THE COURT:  Those are two different issues.  What is

25  the job that you say that these interns were doing?  Tell me

E7gWmorC

1    the nature of the job.  Give me the job description.  Tell me

2    what it is you say that, at this stage of the proceedings,

3    these affidavits and these allegations indicate that somehow

4    they were doing the job of an employee that you can give me a

5    job description of.

6            MS. LUSHER:  Sure.  So the named plaintiff, Katherine

7    Moreno, talks about how she performed data entry, inventory

8    control, creating reports and digital ad campaigns and also

9    doing basic office tasks, such as copying.

10           THE COURT:  You're not saying that there's anything

11   wrong with asking an intern to do any one of those things, are

12   you?

13           MS. LUSHER:  If they aren't being paid, then, yes.

14           THE COURT:  What part of that do you say you can't ask

15   an intern to do, if the intern is there?

16           MS. LUSHER:  The intern is supposed to be getting an

17   educational experience.

18           THE COURT:  I understand that.

19           MS. LUSHER:  The internship is supposed to benefit the

20   intern, not the company.  The common allegation is that these

21   individuals were doing work that benefitted the defendants, not

22   the intern.

23           THE COURT:  But you didn't characterize it correctly.

24   The question is not whether it benefitted the company or

25   benefitted the employee.  The question is whether it primarily

E7gWmorC

1    benefitted the intern.  I mean, obviously, if you have an

2    intern in your office or I have an intern in chambers and I say

3    would you Xerox this for me --

4              Xerox isn't a good word.

5              MS. LUSHER:  I understand.

6              THE COURT:  -- would you make a copy of this document

7    for me, that doesn't transform them into an employee simply

8    because you argue that I benefitted from the fact that I ran

9    the intern upstairs and asked them to make the copy and told

10   them to bring it downstairs.  You have to give me something

11   more than that.

12             MS. LUSHER:  I believe that these individuals have,

13   your Honor, respectfully.  I mean, there was another individual

14   who was creating Power Point presentations.

15             THE COURT:  Why does that make them an employee?  Why

16   does any particular task that you identify make them an

17   employee?

18             MS. LUSHER:  I don't think, respectfully, that the

19   question is now whether or not they were actually an employee;

20   it's whether they have a common allegation that they were doing

21   work.

22             THE COURT:  Right.  What's the common allegation?  I

23   don't understand the common allegation.  The only common

24   allegation that I hear at this point is that you have three, if

25   not four, employees who said that they did a number of tasks.

E7gWmorC

1   Quite frankly, I don't see any two employees who say they did

2   the same task.  So that's not the common denominator here.

3   They all gave different examples of different things that they

4   did that you say cumulatively should make them all employees.

5   But I don't understand what the common job is that you say that

6   they're doing.  One says they did Xeroxing, one says they did

7   Power Points, one says they did something else.  What is the

8   common denominator of the job performance that you're talking

9   about?

10          MS. LUSHER:  This is the same defense that the

11   defendants have brought up in other cases that were brought by

12   unpaid interns, the same questions were asked by the court and

13   as in Grant v. Atlantic, I think that's particularly

14   instructive here, the common allegation was that they were

15   doing work that nonexempt employees in their departments were

16   also performing.  So it's okay that they were doing different

17   tasks; they all don't have to be performing the same task.  If

18   you take a simple restaurant, for example, you can have the

19   dishwasher in the kitchen and the waiter out front and they're

20   performing different tasks.

21          THE COURT:  That's not true.  They could even be

22   performing some of the same tasks.  I could have an intern wash

23   a dish.

24          MS. LUSHER:  It's true.

25          THE COURT:  That doesn't make them an employee, right?

E7gWmorC

1          MS. LUSHER:  Exactly, but in the other cases such as

2     against Warner Music and Viacom and Fox Searchlight and also

3     against Hertz Corporation, which were all conditionally

4     certified, the common allegation was that the interns were

5     uniformly misclassified, no matter the department, no matter

6     the location, no matter what task they were doing.  They were

7     all misclassified and they all allege that they performed the

8     same type of work that paid employees in their department

9     worked.

10          THE COURT:  First of all, how far have you gotten in

11     discovery?

12          MS. LUSHER:  Not far at all, which is one of the

13     reasons that we also advocate that we have a modest burden

14     here.  And your Honor is well versed in this type of law, if it

15     turns out that after substantial discovery has been conducted

16     and it turns out that these class members are not similarly

17     situated, then the class can be decertified at that time.  But

18     the burden here is low.  And even in the Hertz Corporation case

19     and Fox Searchlight substantial discovery had been conducted in

20     both those cases and they were still conditionally certified

21     even though it was 19 different magazines and it was various

22     Fox affiliates, but the court said that it was enough to send

23     out a notice.  All you're doing is sending out a notice to

24     people.

25          THE COURT:  On this current record, if your only

E7gWmorC

```
 1    allegation is that I'm an intern and I did the tasks they asked
 2    me to do and the tasks were tasks that other people also do,
 3    who are paid, that simple allegation is not sufficient.  That
 4    allegation probably could be made by any intern.  Any intern
 5    can give you a list of things that they do that they would say
 6    that other people also do who are paid, and they could say that
 7    if I wasn't here, somebody else would do it.  As I say, taking
 8    your photocopying example, of course, any intern or employee,
 9    exempt or not exempt, could say when I went there, they asked
10    me to do X task, and my allegation is if I wasn't there,
11    somebody else would have to do X task, so I think that makes me
12    an employee.  That's not the way it works.  Right?  You would
13    agree with that, because everybody can say that, right?
14            MS. LUSHER:  I believe that that's looking at the
15    individualistic tasks of what each intern was performing.
16            THE COURT:  Right.
17            MS. LUSHER:  Instead of their common allegation.
18            THE COURT:  That's what I'm trying to get at.  What is
19    the common allegation?  What is the common factual denominator?
20    What is it that you say that the person in California was
21    doing, which is the same as the person in New York was doing,
22    which is the same that the employee in California was doing,
23    and is the same that the employee in New York is doing.  On the
24    facts that you give me, they're not the same tasks.
25            MS. LUSHER:  Correct.
```

E7gWmorC

1          THE COURT:  And it doesn't tell me whose job it was to

2     do these tasks; it doesn't clearly tell me.  It makes them an

3     employee why?  That's what I'm trying to understand.  Why does

4     it make them an employee?  It clearly doesn't make them an

5     employee simply because they gave me a list of the kinds of

6     thing that they do when they come to the job as an intern and

7     most, if not all, of those things would be done by somebody

8     else if the intern wasn't there.  That doesn't make them an

9     employee.  Right?  Would you agree with that in and of itself?

10          MS. LUSHER:  Again, your Honor --

11          THE COURT:  Answer that question first.  Yes or no?

12     I'm trying to figure out the extent of your argument.  Is your

13     argument that that automatically makes it sufficient to allege

14     that there is a common plan or scheme to use interns instead of

15     paid employees?

16          MS. LUSHER:  Yes.  Yes.  If you're performing the same

17     work as a paid employee in your department and you're not being

18     paid for it, then you should be compensated.

19          THE COURT:  Tell me what employee and what intern is

20     performing the same job responsibilities.

21          MS. LUSHER:  Katherine Moreno, the plaintiff; Aaron

22     Dumas, the plaintiff.

23          THE COURT:  Start with the first one.

24          MS. LUSHER:  Katherine Moreno.

25          THE COURT:  Whose job is Katherine performing?  What

E7gWmorC

1    employee's job is Katherine performing?

2              MS. LUSHER:  The same that other employees --

3              THE COURT:  What employee?  What is the job

4    description of that employee?

5              MS. LUSHER:  In the digital marketing department is

6    where she worked and she was performing the same work as other

7    individuals in the digital marketing department.

8              THE COURT:  As who?  She was performing the same work

9    as who?

10             MS. LUSHER:  Entry-level employees in the digital

11   marketing department.

12             THE COURT:  In what way?  Tell me specifically in what

13   way.

14             MS. LUSHER:  She was performing data entry, inventory

15   control, creating reports.

16             THE COURT:  Which part of that do you say that she

17   can't perform as an intern?

18             MS. LUSHER:  It has to be an educational experience

19   from where she's benefiting, instead of the company benefiting.

20             THE COURT:  You think performing those tasks is

21   somehow inconsistent with an educational experience?  That

22   doesn't tell me whether it's an educational experience or not.

23   I assume she has to perform some tasks or she wouldn't have an

24   educational experience.

25             MS. LUSHER:  She may very well have to perform some

E7gWmorC

1    tasks, your Honor, but, again, I respectfully submit that at

2    this point they all just have to have the common allegation.

3           THE COURT:  What is the common allegation?  What is

4    the common factual allegation?  The common factual, not the

5    boilerplate.  What is the common factual allegation?

6           MS. LUSHER:  That SONY had a centralized internship

7    program, that everyone applied through the same Web site with

8    the same internship application out of the same location.  It

9    was all run out of New York.

10          THE COURT:  Okay.

11          MS. LUSHER:  And that no matter where they were

12   placing these individuals and no matter what these individuals

13   were doing, they automatically classified them as exempt from

14   the Fair Labor Standards Act, and the plaintiffs allege that

15   that was a misclassification because they were performing the

16   work of paid employees in their department, which is proven out

17   by the documents.

18          THE COURT:  Slow down.

19          MS. LUSHER:  Sorry.

20          THE COURT:  The only part of that that has any

21   relevance to your motion is trying to define for me what it is

22   you say was the common work that they were making the interns

23   do.  What is the common work that you say that they were making

24   the interns do that is the work of some other employee at this

25   stage?  What are the specifics?

E7gWmorC

1            MS. LUSHER:  I mean, I can't allege that they were all

2    performing the same type of work because they weren't.

3            THE COURT:  Okay.  So that's not a commonality.

4            MS. LUSHER:  The common allegation is that they were

5    misclassified as exempt from the FLSA.

6            THE COURT:  That's not the common allegation.  That

7    they were misclassified is a conclusion.  All right?  That's

8    not the factual allegation.  In what way do you say that they

9    were misclassified at this point, that I can put my hands on?

10   They were classified as interns and they should have been

11   classified as which kind of employee?

12           MS. LUSHER:  Entry-level employee.

13           THE COURT:  What kind of employee, what job?

14           MS. LUSHER:  If they were working in the marketing

15   department, it's an entry-level marketing department person.

16   It could have been somebody that was working in the publishing

17   department, worked as an assistant with the publishing because

18   they did mailings.

19           THE COURT:  The problem that I have is that you've

20   only given me three, maybe four, examples.  You've given me

21   three examples?

22           MS. LUSHER:  I can give you more if your Honor wants

23   to hear more.  Even SONY's own papers --

24           THE COURT:  Slow down.  You only gave me three people

25   who gave some factual allegations about what they did, is that

E7gWmorC

1    correct?

2              MS. LUSHER:  We gave you three declarations.

3              THE COURT:  You gave me three declarations, right.

4              MS. LUSHER:  Along with the information on the

5    centralized internship program.

6              THE COURT:  Do you claim that each one of these three

7    individuals was performing the same employee job?

8              MS. LUSHER:  No, not the same type of work.

9              THE COURT:  That's what I'm trying to understand.

10   What type of work are you saying that each one of them is

11   performing?

12             MS. LUSHER:  Again, if you want to talk about Aaron

13   Dumas, he was creating Power Point presentations.

14             THE COURT:  Whose job was he doing?  What should he

15   have been classified as?

16             MS. LUSHER:  An entry-level employee in the marketing

17   department.

18             THE COURT:  He should have been classified as what?

19   What is the job in the marketing?

20             MS. LUSHER:  We haven't done enough discovery, your

21   Honor, respectfully.

22             THE COURT:  I'm asking.

23             MS. LUSHER:  His allegations are that he was creating

24   Power Point presentations, that he was developing strategy to

25   promote their artists.  This is the type of work that's done by

E7gWmorC

1   the people in the marketing department that they're paid for.

2            THE COURT:  The type of work is not what I'm

3   concentrating on.  Every intern should do the type of work that

4   employees are doing.  Wouldn't you agree?

5            MS. LUSHER:  In an educational environment, yes.

6            THE COURT:  That's not the distinction.  You're saying

7   he was doing an entry-level marketing employee job.

8            MS. LUSHER:  Correct.

9            THE COURT:  What do you say the other two were doing?

10           MS. LUSHER:  Again, Katherine Moreno worked in two

11   different departments.  She worked in the digital marketing

12   department and she also worked in the A&R department, but she

13   was also doing basic administrative tasks.

14           THE COURT:  What is the job?

15           MS. LUSHER:  She was an entry-level administrative

16   employee.

17           THE COURT:  What about the other one?

18           MS. LUSHER:  She worked in the promotions department.

19           THE COURT:  The promotions department?

20           MS. LUSHER:  Yes.  And she even took over her

21   supervisor's duties when her supervisor went on vacation.

22           THE COURT:  I don't know what that means.  Could she

23   hire and fire people?

24           MS. LUSHER:  I doubt that.

25           THE COURT:  As I said, that's a conclusory statement.

E7gWmorC

| | |
|---|---|
| 1 | That doesn't tell me anything.  She took over what |
| 2 | responsibilities when the supervisor wasn't there? |
| 3 | MS. LUSHER:  Of the pop promotions department. |
| 4 | THE COURT:  What responsibilities and what job |
| 5 | function did she serve when the supervisor wasn't there?  As |
| 6 | you say, she didn't take over the supervisor's job position |
| 7 | because she didn't have the power to hire and fire people, so |
| 8 | that's not what you're referring to.  What job function did the |
| 9 | supervisor have that she took over when the supervisor wasn't |
| 10 | there? |
| 11 | MS. LUSHER:  Again, it's an entry-level administrative |
| 12 | employee.  She was making photocopies, running radio reports. |
| 13 | THE COURT:  Wait a minute.  Slow down.  You can't tell |
| 14 | me that she took over the job of the supervisor by making |
| 15 | photocopies.  You can't make that argument.  You know that you |
| 16 | can't make that argument. |
| 17 | MS. LUSHER:  She was making photocopies and doing |
| 18 | other tasks.  When her supervisor went on vacation, she alleges |
| 19 | that she had to take over some of those responsibilities. |
| 20 | THE COURT:  What are the tasks that you say she took |
| 21 | over for the supervisor?  Those are conclusory allegations. |
| 22 | That doesn't tell me anything about whether she should be |
| 23 | classified, and I'm sure you're not arguing she should be |
| 24 | classified as a supervising employee. |
| 25 | MS. LUSHER:  Simply an entry-level administrative |

E7gWmorC

employee that should have been paid for the work she performed.

        THE COURT:  What activity are you referring to that she did when the supervisor wasn't there that you say was taking over for the supervisor?  I don't know what that means. What does that mean?  What do you mean by that?

        MS. LUSHER:  That she was helping to run the department when her supervisor was gone.

        THE COURT:  How?  She did what?

        MS. LUSHER:  I can't give you a specific.  I can't answer that question.

        THE COURT:  It makes a difference.  You can't just in general say she took over for the president of the company when he was on vacation and say that that's a sufficient allegation that she should be paid.  I don't know what that means.

        MS. LUSHER:  I think that that was only a small part of her internship and that the majority of her internship was spent doing administrative work.

        THE COURT:  At this point, you don't have any more specifics as to what job specifically.  Is it your position that the interns that you've alleged, the three interns that you've alleged, were doing specific job classifications?

        MS. LUSHER:  That they were performing the same type of work that paid employees were.

        THE COURT:  Which paid employees?  That's what I don't understand.

E7gWmorC

1          MS. LUSHER:  Entry-level employees, and, yes, mostly

2     administrative.

3          THE COURT:  Do you have a job description that you can

4     reference to let me know?

5          MS. LUSHER:  We can reference the outline of

6     responsibilities that was given.

7          THE COURT:  And that outline of responsibilities adds

8     up to whose job?

9          MS. LUSHER:  For example, Katherine Moreno was given,

10    and in her internship offer letter it laid out the duties she

11    was going to be performing during her internship.  And that's

12    Exhibit B.

13         THE COURT:  Whose job was that?  Whose job function

14    was that?  Which job position?

15         MS. LUSHER:  All I can tell your Honor is that it's an

16    entry-level person in that department, obviously, because it's

17    an intern performing it.  Again, we haven't conducted much

18    discovery in this case.  At the time this motion's being made,

19    I can't equate that to the specific job title.

20         THE COURT:  I know, but you want me to say at this

21    stage that you've presented enough allegations to classify

22    every single intern throughout the country as a paid employee.

23    That's what you've asked me to do.

24         MS. LUSHER:  Respectfully, SONY made that

25    all-encompassing classification when they classified all

E7gWmorC

1    interns as unpaid throughout the country, and without looking

2    at the individual responsibilities --

3              THE COURT:  I don't know whether or not every single

4    intern throughout the thousands of interns throughout the

5    country, every single intern is doing the same job.  You don't

6    even allege that the three interns are doing the same job.

7              MS. LUSHER:  That's correct, your Honor, but this is

8    the same type of evidence that was submitted in the case

9    against Viacom, which had 6,500 interns, more locations, more

10   departments, and also the same thing in Warner Music, which

11   also has 3,000 interns, more locations, more departments.

12   We're only talking about four locations here, and they were all

13   run out of New York.  In Hertz, there were 19 magazines.

14             THE COURT:  You're saying to me anybody who is an

15   intern, no matter what their responsibilities are, and you've

16   given me no common responsibilities of any intern at this stage

17   of the proceeding.  You're saying simply because they're

18   classified as an intern and simply because you have an

19   allegation at this point that three of the interns have said

20   that they did tasks that employees would do if they weren't

21   there, that that should be a sufficient basis at this stage of

22   the proceeding to classify everyone as an unpaid employee.

23             MS. LUSHER:  I'm saying that at this stage of the

24   litigation, we have the three declarations.  We've also

25   submitted evidence of common internship program.

E7gWmorC

1          THE COURT:  What's the evidence of the common

2     internship?

3          MS. LUSHER:  That every intern applies through the

4     same Web site, gives the same information.

5          THE COURT:  That doesn't tell me they're doing the

6     same job.

7          MS. LUSHER:  But they don't have to, respectfully.

8     They don't have to do the same job.  They are doing the same

9     job.

10          THE COURT:  But you have to give me some evidence that

11     they're doing a job function that at least most of them, if not

12     all of them, are doing a job function of an employee.

13          MS. LUSHER:  Respectfully, it's just like the court

14     found in Warner, that all that has to be found at this stage of

15     the litigation, which is simply to send out a notice to people

16     to tell them about the case, is that they have all alleged the

17     same violation of the law, and that's that they were

18     misclassified.

19          THE COURT:  No.  They have to factually allege the

20     same violation of the law.

21          MS. LUSHER:  It's a modest burden.

22          THE COURT:  Yes, it's a modest burden, but it's a

23     different burden than you just characterized.  They can't just

24     simply say I'm an intern and I did a job there and I think that

25     that makes me an employee.  That's not good enough.  You would

E7gWmorC

1  agree with that.

2          MS. LUSHER:  Actually, I think that as long as they

3  all have, this is just like these other misclassification cases

4  that have already been collectively certified.  You've alleged

5  that you were misclassified because you were performing work

6  that paid employees were performing, only you weren't paid for

7  it or you weren't paid correctly.  And there's a plethora of

8  case law where misclassifications have been collectively

9  certified and notice has gone out.  This is not the end stage

10  where discovery has already been conducted and we're trying to

11  find out whether or not these people actually should have been

12  paid for the tasks that they were doing.

13          THE COURT:  But in most of the cases you cited, there

14  is a common job responsibility that was focused on and alleged

15  and it was alleged that they performed these common job

16  responsibilities, and if they had not performed these common

17  job responsibilities, they would have to be performed by

18  current employees or hiring more employees because they have

19  those job responsibilities.  That's the nature of most of the

20  cases.  That's what I'm looking for in your case at this stage

21  of the proceeding.

22          MS. LUSHER:  In the cases that had been certified,

23  your Honor, respectfully, they weren't performing the same type

24  of work.  In Hertz, there were 19 different magazines, and

25  that's one of the reasons they couldn't get Rule 23

E7gWmorC

1    certification.

2         THE COURT:  But 19 different magazines doesn't tell me

3    anything.

4         MS. LUSHER:  The court was saying that their

5    experiences were too different to meet Rule 23.  The court

6    granted 216(b) and the defendants even moved for

7    reconsideration in Glatt and in Hertz, and the court denied

8    reconsideration, stating that, look, it's a limited burden at

9    this point.  You're allowed to send out a notice to people.  If

10   it comes out that after substantial discovery has been

11   conducted and it turns out that they're not similarly situated,

12   the class will be decertified.  Also in Viacom, the defendants

13   made the exact same argument, that you have all these different

14   departments and people were doing all these different tasks.

15   The same exact thing was made in Warner, and the judge

16   specifically addressed that argument saying that the disparate

17   factual -- sorry.

18        THE COURT:  Part of the problem that I have is that

19   you have not alleged that there is a company policy to

20   specifically have interns do certain types of tasks.  You have

21   pointed to three people who are in different offices who did

22   different jobs and who do different tasks, and said that other

23   people who get paid do the same tasks that I do, but in most of

24   the other cases, there was a common plan by the employee to

25   have certain responsibilities be done by the interns.  In this

E7gWmorC

case, I don't know what it is.  You're not saying that SONY has

decided that they don't want to hire anybody to do copying, so

they're going to hire unpaid interns and their job

responsibility is to do the copying because they don't want to

pay other people to do copying.  That's not what you're saying.

You just give me a soup of stuff, of different things that you

say interns did, and none of them overlap, and you say, well,

our theory is just in general that whatever they ask the

interns to do, that other people who get paid do that sort of

thing, so it's just their plan in general to just find some

task in some office that's not a common task that either their

employee does or the intern does, and say, well, because

they're giving them these additional tasks, cumulatively, they

make up a common plan.

          That's not the way it works.  You can't just say,

well, what's the common pattern.  Well, in New York, they ask

interns to do copying and in California they ask interns to

write memos, and in the other office, they ask interns to do X.

I don't see the common pattern other than what you want it to

be, that they have a common plan to make interns do all kinds

of different work that if the interns weren't doing those

individual tasks, whatever the task happens to be that that

particular intern says that they're doing, that that itself

makes it a misclassification of all the interns because they've

asked a particular intern to do something different than they

E7gWmorC

1    asked some other intern, but what we claim somebody who is paid

2    also does.  That seems to be at this stage all that I have.

3            I mean, I'm not sure I understand the pattern

4    allegation, and, quite frankly, I'm not sure that even under

5    the minimal burden you have to meet the individual allegations

6    of each one of these interns would be sufficient to make out

7    even that that intern is an unpaid worker.  I mean, to simply

8    just give me a list of things that they say they did and then

9    obviously the natural response is to say, well, if you didn't

10   do it, then somebody else would have to do it doesn't put it in

11   the vein of a common policy by the company.  I'm not even sure

12   what allegation you're making that it's a companywide policy to

13   make interns do work of paid employees, other than you have a

14   common way of hiring interns.

15           MS. LUSHER:  Your Honor, we also submitted intern

16   evaluation forms that were completed by the supervisors of some

17   of these interns who said our team is short staffed, the

18   interns stepped up and came up with creative ways and talks

19   about the different types of work that he did.

20           THE COURT:  Why is that evidence of being an employee

21   rather than being an intern?  Isn't that comment just as

22   consistent with having a useful intern as it is with having a

23   misclassified employee?  Why does that lead in one direction or

24   the other, because I say we were short staffed, I want to

25   compliment this intern on, is that that they had a good

E7gWmorC

```
1    experience, we like the way they work because they really

2    helped us out?  You don't think that that makes one consider it

3    one way or the other whether or not the person should be

4    classified as an employee or as an intern.

5           MS. LUSHER:  I think it's too preliminary to make that

6    determination right now.

7           THE COURT:  Right.  That's my problem.

8           MS. LUSHER:  And I don't think that's the question on

9    this motion, respectfully.  The evidence we submitted shows

10   that the plaintiffs' allegations that these departments were

11   understaffed and that they were required to do the work of paid

12   employees is the common allegation and we've submitted

13   evaluations that back up those allegations as well as

14   declarations.

15          THE COURT:  What evidence of that commonality exists,

16   beyond the three individuals?

17          MS. LUSHER:  The intern evaluation forms that were

18   submitted that show that these individuals were doing work of

19   paid employees that were completed by the intern supervisor.

20          THE COURT:  Quote me something that would be evidence

21   that they were doing work of a paid employee.

22          MS. LUSHER:  Again, your Honor, respectfully, it's

23   evidence that the company had a common policy to utilize unpaid

24   interns when doing paid employees' work.  I'm not trying to

25   prove at this point that they were employees.
```

E7gWmorC

1            THE COURT:  You just said that.

2            MS. LUSHER:  It's a common allegation.

3            THE COURT:  You said that's what you have evidence of,

4    so I asked you to quote it to me.  You said that's the

5    evidence.

6            MS. LUSHER:  "The business and legal affairs

7    department has been severely understaffed and as a result work

8    has been piling up and up.  We were desperate for someone who

9    could take on a lot of things, everything from legal research

10   to contract drafting, and learn how to handle them quickly.

11   With this particular intern, that's exactly what we got and

12   more."

13           THE COURT:  So?  You say that's evidence that they are

14   abusing the employee?

15           MS. LUSHER:  I never said they were abusing anyone.

16           THE COURT:  They're being abused if they're an

17   employee and not getting paid.  I consider it to be abusive.

18   You say that's evidence of bringing someone in as an employee

19   and pretending that they're an intern, you say that evaluation

20   is evidence of that?

21           MS. LUSHER:  I'm saying that that is evidence that the

22   plaintiffs have alleged a common scheme across the departments

23   that they were misclassified.

24           THE COURT:  Why is that common across the departments?

25           MS. LUSHER:  Because it shows that no matter what

E7gWmorC

1    these interns were doing and no matter where they were, they

2    were automatically classified as exempt from the FLSA.  And

3    SONY didn't look into the individual performance of these

4    individuals and say we're going to pay these interns and these

5    interns we're not going to pay; nobody was paid.  And they made

6    that representation, that classification across the board for

7    all interns.

8              THE COURT:  That's true in everything.  That's true in

9    a case where interns are hired and not used as employees and

10   that's true in a case where interns are hired and used as

11   employees.  That's not a pattern.

12             MS. LUSHER:  You're right, and it's the same

13   allegation made in Hertz.

14             THE COURT:  It's not the only allegation that was made

15   in those cases, not the only allegation.  They made allegations

16   of a pattern of decision making by the company to put people in

17   jobs that were paid jobs and not pay them.  You haven't offered

18   that yet.  You've simply offered that we have interns and we

19   spoke to three of them and they say they did certain tasks,

20   these are the tasks they did, and because they did these tasks

21   although none of them did the same tasks, because they did

22   these tasks and we allege that employees do these tasks also,

23   that is enough to show that there must be a pattern throughout

24   the company.  That seems to be where you're at.

25             MS. LUSHER:  In the Hertz and Glatt cases, substantial

E7gWmorC

1    discovery had been conducted by the time that the motion was

2    made so that they had more evidence that that was what they

3    offered.  But in Atlantic and in Viacom and in this case, it's

4    the same evidence, it's the same allegations, it's the same

5    defenses from the defendants, and those cases were certified.

6    And it was exactly the same allegation.  They quote Glatt and

7    Hertz for saying it's the same allegation, that there was a

8    common policy that interns were misclassified as unpaid because

9    they were performing the same work as nonexempt employees in

10   their department.  In both of those cases there were larger

11   groups of interns across more departments and more varying

12   conditions.

13            THE COURT:  How?  In this case, how?  What is the

14   evidence ever that?

15            MS. LUSHER:  The evidence is the declarations that

16   we've submitted along with the other evidence of the common

17   internship program.

18            THE COURT:  There's no evidence of the common

19   internship program that you're offering at this point that is

20   evidence of unpaid employees.  What is the common internship

21   program companywide that you're saying is evidence of

22   employees?

23            MS. LUSHER:  If you want to apply for an internship,

24   everybody goes to the same Web site, no matter what department.

25            THE COURT:  But that's true of every internship.

E7gWmorC

1          MS. LUSHER:  And all of the descriptions are the same

2     as far as you not being paid.  You have to be 18 years of age,

3     you have to get academic credit, and you're not going to be

4     paid, and that's the same thing that the court found in Warner.

5          THE COURT:  No, that's not what the court found in

6     Warner.  What is different about that in a situation where

7     there is a proper internship?  Don't those factors that you

8     just gave me exist even if there's a proper internship?

9          MS. LUSHER:  That if it was a proper internship, yes.

10         THE COURT:  All of those factors would still exist,

11    right?

12         MS. LUSHER:  Yes.

13         THE COURT:  All right.  So that's not evidence of

14    using interns improperly as employees.  That's just the common

15    way that you hire interns.  That doesn't lead to any direction

16    that that is a common scheme to misuse the interns as

17    employees.

18         MS. LUSHER:  But we're not trying to prove that they

19    were misused at this point, your Honor, respectfully.

20         THE COURT:  You're trying to prove that they were

21    misclassified.

22         MS. LUSHER:  We're trying to prove that the allegation

23    is that they were all misclassified.

24         THE COURT:  You're trying to allege that they were

25    misclassified and say that you have a sufficient basis at this

E7gWmorC

point to certify that all interns were used and they have a

commonality, that all the interns that were hired, the way you

say the interns were hired, and there's absolutely nothing

improper about the way the interns were hired.  Right?  You

wouldn't argue that there's any evidence of whether they were

properly classified or not properly classified, wouldn't you

agree with that?

          MS. LUSHER:  I would agree we're not trying to prove

that at this point.

          THE COURT:  No.  Do you agree that what you just

described about how all interns are hired does not have

anything to do with reaching the conclusion of whether they

were properly hired as an intern?  You would agree with that,

wouldn't you?

          MS. LUSHER:  I would agree with --

          THE COURT:  You don't want to agree.

          MS. LUSHER:  No, no, it's not that.  I'm just trying

to make sure what I'm agreeing to.  That's all.

          THE COURT:  Just tell me yes or no.  Your avoidance is

more --

          MS. LUSHER:  I'm not trying to avoid it.  If you're

asking me if you were going to hire an intern to have a legal

internship program, would they have to be 18, would they have

to receive academic credit, and would they fill out an

application, then, yes, they would.

E7gWmorC

1          THE COURT:  So that's not evidence of someone being

2     misclassified.  That's not a common plan that you're trying to

3     allege here.  That's not evidence of a common plan.

4          MS. LUSHER:  It's evidence of a centralized policy

5     because in every case that's already been certified the

6     defendants argue, just like they argue here, it's all different

7     all over the place and interns are handled differently

8     everywhere and nobody has a utilized same policy and in each

9     case that's already been certified, there was a common Web site

10    where interns went, that there was a listing of the unpaid

11    internships, just like in this case, there was a handbook that

12    was given out, everybody went to an orientation.  It's the

13    exact same facts as Warner and Viacom.

14         THE COURT:  Those facts that you just referred me to

15    were not the determinative facts, right?

16         MS. LUSHER:  No.  They were part of it.

17         THE COURT:  They didn't move it one way or the other.

18    They didn't move it one way or the other.

19         MS. LUSHER:  the court brought up those factors in

20    both cases because the defendants had made arguments that each

21    situation was so individualistic and that there was no uniform

22    policy across for all locations, and so the court did highlight

23    that in those cases and specifically said that there was a

24    centralized HR department, there was a Web site, there was an

25    orientation program, we all had to be 18, we all had to say we

E7gWmorC

1          were going to get academic credit.  That was brought up.

2                    THE COURT:  But those were not the determinative facts

3          because those are true in a proper internship, right?

4                    MS. LUSHER:  It was more addressed to address the

5          defendant's defense.

6                    THE COURT:  Right, but that's not what we're talking

7          about here.  We're not talking about that defense here.  We're

8          talking about what is the evidence that draws the inference

9          that this was an improper internship, misclassified internship,

10         rather than a proper internship, and the fact that people go to

11         a common Web site does not help me to resolve that issue.

12                   MS. LUSHER:  I understand that, your Honor.  I do.

13         Again, we're not trying to decide whether or not the internship

14         was proper or improper at this point, respectfully.

15                   THE COURT:  Yes, you are.  You're saying that you want

16         to classify it as a class of people who have been misclassified

17         as interns when they should have been classified as employees

18         and should have been paid.  That's exactly what you're trying

19         to get me to do at this point.

20                   MS. LUSHER:  What we're saying is that they're all

21         similarly situated because they all have that common

22         allegation.  Just like the court said in Atlantic, the key

23         inquiry is whether defendants have a policy of not paying

24         interns to perform the same or similar tasks performed by

25         nonexempt employees.  It's the common set of allegations.

E7gWmorC

1    We're not proving it for each individual at this point because

2    they all say the same thing.

3              THE COURT:  That's not exactly accurate.  It is not a

4    common allegation.  It is a common set of facts because I only

5    have three allegations here.  Okay?  So there's no such thing

6    as a common set of allegations.  Your three plaintiffs, as a

7    matter of fact, two plaintiffs and one who is not a plaintiff,

8    make the allegation, so there's no common allegation.  I'm

9    trying to figure out why I should spread the allegations made

10   by these two plaintiffs and a nonplaintiff to apply to all

11   thousands of similarly situated interns based on what common

12   facts.  There's no other intern saying this at this point in

13   time.  There's no other allegation by another intern at this

14   point in time.  There's no other facts that you're giving me

15   that show me that some other intern in California is doing the

16   job of an employee.  You want me to draw that inference at this

17   point and you've given me to draw that inference the three

18   allegations that you have, two from two plaintiffs and one from

19   somebody who is not a plaintiff.  And so I'm trying to figure

20   out, without you telling me what the common activities are of

21   these individuals, why it's efficient at this early stage, as

22   you say, without the discovery that a lot of these other cases

23   had, why it's appropriate for me to say, well, because you say

24   these two people did things that they say that employees also

25   do, that is enough for me at this point to meet the minimum

E7gWmorC

obligation to demonstrate that there's a common policy

throughout to misclassify all interns and all interns are

really employees, and so therefore at this point it's

appropriate based on this record to notify everybody that

you're part of a class of employees simply because you were

called an intern.  That's basically what you've got at this

point.

          The only reason you tell me you want to notify people

is simply because they were classified as interns.  You don't

say I'm notifying you because we have evidence that you were

classified as an intern, but you did X, Y, Z job and that job

was the job of employee X, and therefore, all those people were

similarly situated in that situation, we're notifying you if

you want to be a plaintiff, be a plaintiff.  What you're saying

to me is the only common denominator you've given me beyond

these three individuals is that everybody else was an intern,

must have done, must have been, you have a basis to say to them

that they were misclassified because these individuals said

that they did particular tasks that other people did.  And it's

not even that they say, well, you know what, I came in and the

job of administrative assistant X is to answer the phone, open

the mail, do the copying, and several other tasks.  That's what

that job is.  They brought me in as an intern and I asked them

what are my responsibilities and they said your

responsibilities are to open the mail, answer the phone, and do

E7gWmorC

1    the copying.  That's the standard classical allegation.  So

2    then I can say, okay, you're right, this person is alleging

3    that they're doing the job which are the primary job

4    responsibilities of the person who I know has a job, whose job

5    specifications are to do those responsibilities.  You're more

6    of a vague, well, I did this, somebody else does that, too, I

7    did this, somebody else does that, too, and then a second

8    person saying the same thing, but they're not even saying they

9    do the same thing as the other intern.  I don't even have two

10   interns who say they do the same thing at this stage.

11          MS. LUSHER:  No, we don't allege that they did the

12   same thing, and as in the Glatt case and as in Warner and in

13   Viacom, all those courts found that the disparate employment

14   settings and the different tasks that the interns were required

15   to perform was not what was being looked at on a 216(b) motion

16   and that that was not anything to stop court-authorized notice.

17          THE COURT:  I agree with you.

18          MS. LUSHER:  All we're simply trying to do is send out

19   a notice and let people know there's a case and if they want to

20   join, they can.  And if they don't want to, they don't have.

21   It's just simply to protect them from the statute of the

22   limitations that's tick-tocking every day as this case goes on

23   because they should have the opportunity to join if they want,

24   and then they'll have to stand on their own facts.  But that

25   was not enough to stop court-authorized notice in those cases,

1   and it's also the same in other cases.

2            THE COURT:  Slow down.

3            MS. LUSHER:  Sorry.  It's a bad habit.

4            There's the Indergit v. Duane Reade case where you

5   have the managers and they were classified as managers and they

6   worked at stores nationwide, and they were performing duties

7   that they alleged were nonmanagerial tasks, and, in that case,

8   the court certified saying it was a classic misclassification

9   case, and it was a 216(b) conditional certification, and it was

10  simply to put out a notice to say, look, if you fell into this

11  particular classification, you have an opportunity to

12  participate in this case.  To me, it's the same type of case.

13  And quite honestly, your Honor, these cases have gotten a lot

14  of publicity lately and they're a hot topic, and I'm the first

15  to admit that, because they're all over the news.  I don't

16  think they're any different than a simple restaurant case like

17  we were talking about before or a simple construction case

18  where you have different people that did different jobs on that

19  construction site or in that particular restaurant, but they

20  all say I didn't get paid my overtime.  You have two or three

21  individuals that come forward.

22            THE COURT:  I know, but in most of those cases you can

23  identify the job responsibilities and whose job responsibility

24  that the unpaid worker was doing and what the nature of that

25  job was and that job responsibility.  You sort of say, well, I

E7gWmorC

1    filled in when the supervisor was on vacation.

2              MS. LUSHER:  I understand that.

3              THE COURT:  That's not as meaty.  That's not the

4    stronger case.

5              MS. LUSHER:  I understand that.  But she also alleged

6    that she did do other tasks and we also did submit evaluations

7    that were evidence of other interns, we would allege,

8    performing work that they should have been paid for, to go with

9    the common allegation that there's a common policy, and those

10   are the intern supervisor evaluation forms.

11             THE COURT:  Take any one of the affidavits that you've

12   submitted.  Tell me which of those tasks that they say they

13   did, which you say they shouldn't have been asked to do without

14   being paid.  Pick one and tell me which one you say that they

15   shouldn't have been asked to do unless they were paid.

16             MS. LUSHER:  I will.  I respectfully say that I think

17   that's starting to get into the merits of it.

18             THE COURT:  It's not getting into the merits.  I'm

19   trying to figure out whether you have minimum sufficient

20   allegations to demonstrate that there's a pattern that they're

21   making people do employee work.

22             MS. LUSHER:  Extensive data entry.

23             THE COURT:  You say that asking the intern to do data

24   entry means that that person should be paid?

25             MS. LUSHER:  They could be, if they're performing the

1    same work as the paid employee next to them is performing.

2                THE COURT:  That's the part that I keep asking you

3    about.  What's the evidence that they're doing the paid work

4    that the person next to them is doing?

5                MS. LUSHER:  Retrieving lunch or coffee.

6                THE COURT:  So you think they can't ask an intern to

7    retrieve lunch or coffee?

8                MS. LUSHER:  Absolutely.  They can ask them to do

9    whatever they want, but they should pay them.

10               THE COURT:  Wait a minute.  You're saying that you in

11   your office, me in my office, them in their office, you can't

12   ask your intern to go get you coffee?

13               MS. LUSHER:  I don't know.

14               THE COURT:  I have been asking someone to get me

15   coffee for the last 45 years, she refuses.  She says that's not

16   her job.  I can't even get past square one with her on that.

17   But I don't think that if I asked an intern, I mean, if they

18   say I'm going to Starbucks, would you want some coffee,

19   Judge -- usually I say no, because I don't spend that much

20   money on coffee, but I don't think that they could sue me

21   because I asked them to get coffee.  Whose job is it to get

22   coffee?  That's not a good example.

23               MS. LUSHER:  I don't know what kind of educational

24   experience they're getting, except that maybe Starbucks is too

25   expensive, if they send them out to get coffee or lunch.

E7gWmorC

```
 1              THE COURT:  I know, but you have to show me that
 2    that's somebody else's job responsibility.  It doesn't have to
 3    be that it has to be related to teach them something
 4    specifically.
 5              MS. LUSHER:  Sure.
 6              THE COURT:  You have to tell me they're supposed to be
 7    paid.  You know you can't argue that simply because you ask the
 8    intern to go out and grab you a sandwich or to get you coffee,
 9    that means the intern is misclassified and that the intern
10    shouldn't have to do that unless he or she is paid.  That's not
11    the way it works.
12              MS. LUSHER:  I think if they're going out to get
13    coffee, they should be paid.  To me, that's not an educational
14    learning environment.
15              THE COURT:  No, but they only should get paid if
16    that's a paid person's job.  Right?
17              MS. LUSHER:  I understand.  For example, I'll give you
18    another example, if you'd like.  In the defendant's
19    submissions, they had a submission of a supervisor,
20    Mr. Sanchez, who said that he would often assign tasks to
21    interns that allowed the department to operate more efficiently
22    because it freed up paid employees, and he even admitted that
23    if the interns wouldn't have been doing it, that he would have
24    been doing it himself.  That's a perfect example right there of
25    him saying that he would have been performing the work or paid
```

E7gWmorC

1    employees in his department would have been performing the work

2    had the unpaid interns not been performing the work.

3              THE COURT:  No.  Performing the task.

4              MS. LUSHER:  The task.

5              THE COURT:  That's the thing, but that's true of every

6    task, right?  I mean, if I ask somebody to go do Xeroxing for

7    me, if they weren't there, I have to do it for myself.

8              MS. LUSHER:  You would.

9              THE COURT:  That doesn't tell me that the intern who

10   didn't happen to be there that day should be paid for it if

11   they happened to be there that day and I asked them to do it.

12   That's not the definition.  Is it?

13             MS. LUSHER:  Whether or not they should have actually

14   been paid for it, your Honor, is I think where I'm coming from,

15   is the fact that right now all we're trying to say is that all

16   of the interns in that case had that same common allegation;

17   they allege that they should have been paid for it, and that's

18   common to all of them.

19             THE COURT:  But it's not up to them to allege that

20   they should have been paid for it.  I couldn't care less

21   whether they think they should have been paid for it.  I'm not

22   asking their opinion about that.  I'm asking whether the facts

23   demonstrate that they were performing the job function of an

24   employee so, therefore, they're entitled to get paid.  Whether

25   they thought they should get paid is irrelevant.

E7gWmorC

1          MS. LUSHER:  I understand.  But the common allegation

2     is that they were performing the job of a paid employee that

3     they weren't paid for and that it didn't matter which

4     department they were working in and it didn't matter which

5     location it was; it's the common allegation for all of them.

6     And that's the low burden that they have to meet at this

7     preliminary stage before discovery has been conducted and

8     simply to send out a basic notice to people that work there so

9     that if they want to stop their statute of limitations from

10    ticking, they can opt in and then they're subject to discovery

11    and we're off to the races.

12         THE COURT:  Let me hear from the other side.

13         MR. BATTEN:  Thank you, your Honor.

14         May it please the Court, early in the argument your

15    Honor mentioned the primary beneficiary test, and that's what

16    applies here and that's what separates this case from the great

17    run of FLSA cases.  All that the plaintiffs have shown, your

18    Honor, is that those three people who submitted declarations,

19    and maybe some people in the evaluations, did some work that

20    was useful, that was productive, that helped the company.  But

21    even taking that at face value and ignoring the declarations

22    we've submitted that directly contradict those things, that's

23    just one part of it because, as your Honor has noted today, all

24    interns do things that may be useful.

25         The whole point of an internship is to do things that

E7gWmorC

1    you can't learn in a classroom by being in a company, and so

2    lawful interns do productive things.  Misclassified interns do

3    productive things.  You have to look at the bigger picture.

4    You have to say what else is going on, and ultimately you have

5    to say who is getting more out of this, is it the intern in

6    this particular instance, or is it the company, and that test

7    is an individualized, person-by-person kind of test that you

8    can't resolve on an aggregate basis.  We can't put Ms. Moreno

9    in front of the jury, have her tell the jury about her

10   internship, then have her supervisor come in and say that's not

11   the way it was at all.  Let me tell you about her internship,

12   she did some substantive things, but I couldn't make any use of

13   it, it was worthless to me.  The jury could decide that, and

14   I'm not asking your Honor to decide the merits, a jury could

15   decide that claim and say Ms. Moreno's internship was lawful or

16   it was unlawful, depending on who got anything out of it, but

17   that wouldn't tell us anything about Mr. Dumas's internship or

18   Ms. Fields's internship.

19         THE COURT:  It would tell us something if we made that

20   evaluation as to one of those individuals and came up with the

21   same conclusion.

22         MR. BATTEN:  That's correct, your Honor, but that's

23   not class.

24         THE COURT:  It is a class if we evaluated every one of

25   the available interns and found that they were utilized in the

E7gWmorC

similar manner with a common plan to use them to substitute for

employees.  It's not the individual inquiry that's important,

it's whether or not that individual inquiry results in a

pattern of a class of people who were being misclassified as

interns and they really should be employees, and that's a

minimal test for them to meet at this point.

MR. BATTEN:  It is, your Honor, but what they have not

given you is any basis to say we could look at any of these

internships and we know how that test is going to come out

because the handbook that they want to refer to talks about

recruiting interns and talks about evaluations, talks about how

you get interns in the door and what you do after they go out

the door, but it doesn't say anything to any supervisor about

how you're supposed to run your internship, teach them things,

whether you're supposed to supervise them, whether you're

supposed to make them go get coffee or you're supposed to let

them do some reports.  That's all left up to the individual

supervisors, and there's no evidence in the record to

contradict that at all.

What we've got before your Honor here is a common

program to bring some interns in and to evaluate them at the

end, but nothing that tells you that over the great class of

almost 3,000 people that they all did the same thing, that they

had the same experience, got a lot out of it or got nothing out

of it.  Those are things that on this record we will have to

E7gWmorC

1   look at person by person, at least to start with.

2           What we're asking your Honor to do is to foresee that

3   what's going to happen in this case is what happened in the

4   Hertz case.  Yes, the court there conditionally certified the

5   class, the parties went out and did months of discovery, there

6   were more than a hundred declarations submitted to the court

7   and the court said now I have to look at the legal test, it's

8   this primary beneficiary test, and you know what, I can't do

9   this on a class basis.  So the very arguments that were made at

10  conditional certification turned out to be accurate, and that's

11  what's likely to happen here because the plaintiffs haven't

12  given your Honor any evidence that the inquiry, this balance,

13  this who is the primary beneficiary, is going to play out the

14  same way across the whole class.

15          There are conflicts already in just the declarations

16  that your Honor has.  For example, Ms. Moreno has a short

17  declaration that says what she did.  Her supervisor put in a

18  detailed declaration rebutting all that.  We're not asking your

19  Honor to resolve that; that's probably a merits issue, but the

20  point is you can see from that little microcosm the kinds of

21  factual issues that are going to have to be decided in order to

22  determine just whether Ms. Moreno's internship was legal or

23  not.

24          THE COURT:  At this stage, I'm supposed to accept what

25  Ms. Moreno said she did.  I'm not supposed to resolve that, but

1    you don't get the benefit of my not having to resolve that

2    factual dispute at this point.  They get the benefit.

3           MR. BATTEN:  I understand, your Honor, I agree.  What

4    I'm saying is that eventually that factual dispute is going to

5    have to be presented and it's not the kind of dispute that

6    allows you to resolve the claims of a small sample and say from

7    those things, from those resolutions, we can conclude that

8    there was a plan and that everybody else's internship was

9    unlawful.  This is not like a case where you have a collective

10   bargaining agreement that's got a provision in it that the

11   plaintiffs challenge and you know if you try that case as to

12   one union member you're going to get the same result for

13   everybody else so why try it a hundred times.  That's not this

14   case.

15          In this case, we could try Ms. Moreno, we could try

16   Mr. Dumas, we could get an answer and we'd still know nothing

17   about any of the other 70 departments or locations across the

18   country.

19          THE COURT:  I'm not sure that that would be true.  It

20   depends on what discovery would uncover.  If the discovery

21   uncovers a smoking gun or memo that talks about how interns are

22   supposed to take the place of employees, then I don't need

23   that.  That is the commonality.

24          MR. BATTEN:  If that were to show up, your Honor, but

25   at this point, they have to give you some modest basis to

E7gWmorC

conclude that it may be true, and it's not here.  It's not
here.  Ms. Moreno has said only in the most general terms I
performed the same work as paid employees.  So what?  Every
intern performs work that may be similar to what paid employees
do.  That's not the question.  The question is when you did
that, how did that balance out against the other things; did
you learn things; were you able to get a job in the industry
after that; did you get contacts that you were able to use that
offset some of that productive work and we come to a balance.

There's nothing in the record about any other factors.
Even if you look at just the six factors that the Department of
Labor puts out in their fact sheet, and there are six Federal
Circuits that say or it's not enough, but even if you look at
that fact sheet, productive work is one out of the six factors,
and that's the only subject on which the plaintiffs have given
you any evidence today.  And so what they're asking your Honor
to do is to conclude that because they've got three people who
did some productive work, one out of six factors, probably all
the other ones are going to go our way and that's enough to
have 2,700 people told about this case and invited to come in
here and join.  That's not what the modest factual showing is
about.  And if it were, every case would be certified, not just
intern cases but misclassification occasions generally.  What
they've said is we've got one part of the test, we think we're
going to win, and there are a whole bunch of other people who

E7gWmorC

may have done the same thing, might win also on that one out of

six factors, that should be enough.  That's not what

substantially similarly situated is about.

     All of the common things that they've given your

Honor, the evidence that things were the same for each intern,

are lawful.  Their burden is to present a modest factual

showing of some common unlawful policy, but in order for an

intern policy to be unlawful, it has to involve getting work

out of interns without giving them anything in return.  That's

what makes it unlawful.  What they've presented to you is,

well, it looks like everybody applies through the same Web

site, we don't exactly know what anybody does after that, and

then they get evaluated at the end.  Those are the common

pieces, and, yes, that runs through human resources, those

common pieces, that they get the recruits in, they send them

out to be interviewed by the individual departments, and then

at the end human resources asks the supervisors to come back

and give them evaluations.  Nothing about that is illegal.

     There is an academic credit requirement.  That's not

illegal either.  All of those things are perfectly consistent

with legal internships.  They've got to present some evidence,

some basis for your Honor to conclude that there's something

fishy here, that these are unlawful internships and not lawful

ones.  What's really going on is the plaintiffs want to present

to your Honor a legal standard that says if you do anything

E7gWmorC

useful, you should be paid.  Ms. Lusher came very close to

saying that in argument just now.  That's not the law.  And

there are six Federal Circuits, as I say, every court to

consider the question has said that's not the law.  You can do

productive work and still have a lawful internship.  There's no

basis to notify anybody else in this group because there's no

evidence, none, that SONY has adopted anything common that's

unlawful, so cert should be denied.

Thank you, your Honor.

THE COURT:  Ms. Lusher, is there anything else you

want to add?

MS. LUSHER:  I just want to stress, your Honor, that

the other courts that have granted conditional certification in

these cases, it was the exact same allegations and that they

denied looking at the DOL factor test or at Walling, that the

primary beneficiary test, that that's getting into the merits

of these allegations and that that's inappropriate at this

stage.  I believe that there's more than just three

declarations that have been submitted here as evidence.  I

believe that the defendants' declarations support our case.

They also have individuals who did internships that talk about

how they did copyright registrations.

THE COURT:  I'm sorry.  What are you referring to

that's in the record?

MS. LUSHER:  I'm referring to the declarations that

E7gWmorC

1   were submitted by the defendants.  They submitted declarations

2   from two supervisors and also a couple of interns and they also

3   submitted some evaluation forms that were completed by interns

4   themselves.

5          The declarations they've submitted, it's our position

6   that they support, they show that there were interns that were

7   performing work.  And while I agree with my adversary's

8   assertion that the supervisor of Ms. Moreno disagrees with what

9   she says, that's weighing credibility and merits at this point,

10  and that's inappropriate.  But I think that the important thing

11  to look at is that these individuals that they have put in

12  support of their case have talked about substantial work that

13  they've done.  And I'll just point out to your Honor again that

14  in all of these cases, the courts have said specifically that

15  the disparate factual employment settings of the different

16  interns didn't matter, and what mattered was that they all

17  alleged the same allegation, just like in other

18  misclassification cases with managerial employees and other

19  individuals who were classified as exempt, that we weren't paid

20  and we should have been paid.  And that's the commonality

21  issue.

22         THE COURT:  That's not the basis of the allegation.

23  The allegation the Court's referring to is a factual

24  allegation, what are the factual commonalities, not everybody

25  who you want to be a plaintiff, who wants to be a plaintiff is

E7gWmorC

1    going to say the conclusory general statement that I should

2    have been paid and I did work that paid people are supposed to

3    do.  Everybody says that.  That is not a factual assertion.

4    The question is what underlies that factual assertion, how do I

5    analyze the minimal record that I have now for the minimal task

6    to say, okay, I understand why they're saying that, that's what

7    I'm trying to get at.  All the plaintiffs, whether you have

8    three, whether you have 2,000, that's what they want to say,

9    and that's the nature of the allegation.  But what are the

10   facts that indicate that.  And as I go at this stage back to,

11   well, you know, this intern can refer to five different things

12   that they did while they were there and they could say there is

13   somebody else who also gets paid who does each one of those

14   things or at least one of those things, and then another one

15   says the same thing about their setting in general, and then

16   the third one says the same thing about their setting in

17   general, the nature of the allegations at this point aren't

18   even that this particular affiant does these five things and

19   those five things are the job of this particular employee.

20   That's not even in the nature of the allegations.  The nature

21   of the allegations at this point is sort of I do these five

22   things and I think there's at least somebody out there who is

23   getting paid to do one of those five things.

24            MS. LUSHER:  I think, respectfully, the nature of the

25   allegation is that the defendants had a common unlawful policy

E7gWmorC

1    to utilize unpaid interns to perform the work of paid

2    employees.

3              THE COURT:  And what fact makes me conclude that

4    there's a common policy?

5              MS. LUSHER:  That the individuals worked in different

6    departments and they said that they worked next to people that

7    were performing the same type of work that they did but that

8    these people were paid, as well as the evaluations that were

9    completed by the intern's supervisors where they admit that

10   their departments were understaffed and that they were happy to

11   have these interns there to perform this work because they

12   would not have been able to complete those tasks; the

13   allegations of their manager supervisor, Mr. Sanchez, who said

14   that if the intern wasn't there, the duties would have been

15   absorbed back into the department and he may have been doing

16   some of those himself.  I think that those are facts that back

17   up the common policy that they utilized unpaid interns to

18   perform work of paid employees, and there was a common policy.

19   That's the common allegation.

20             THE COURT:  At this point, obviously, I have some

21   concern about the nature of the allegations here and that

22   concern makes me of the opinion that given the low threshold

23   here, even with that low threshold, the nature of the specific

24   allegations, in particular, the factual allegations don't cross

25   that threshold, and so I'm not going to grant the motion at

E7gWmorC

this point.  I'm going to deny the motion without prejudice to

renewing it, but the allegations are so general.  The

allegations are not uniform.  The allegations don't give me a

common denominator, a common plan of utilization by the company

at this point to indicate that there is enough here to say that

it is appropriate to notify everybody who just happened to ever

be classified as an intern, or possibly, that they have a

lawsuit here.  I think that some of the factors which you

pointed to which can be consistent with the conclusory

allegations in this case, but they don't lead necessarily in

that direction.  I don't see a common illegal policy other than

the general allegation that they let supervisors make all

interns do work that other paid employees might have done.  I

don't think in any case that in and of itself is sufficient.

        Quite frankly, I'm concerned about the nature of the

very general and limited nature of the allegations even

specifically being made by the three individuals.  I am not

convinced that even if every plaintiff gave those allegations,

I'm not sure that would necessarily demonstrate that, one,

there was a companywide policy; two, that that policy played

itself out in having interns perform work that otherwise needed

to be performed by paid employees and were the job functions of

paid employees, and that the value or usefulness of the interns

to the company outweighed the educational value to the interns.

        Now, there may be a sufficient basis on which to

E7gWmorC

collectively certify this case or set of facts that would give

some confidence that we have in actuality a plan that's

executed by the company to uniformly use interns in an improper

manner, and that plan was effectuated and that there is a

factual basis to demonstrate that that plan was effectuated,

but simply on the basis of giving me a list of unrelated tasks

that are not defined collectively as someone else's job, and

saying, well, I did ten things that I could point to ten

employees, each one of which does one of those things, that in

and of itself is not sufficient.  It is not inappropriate, nor

does it qualify as a legal misclassification to simply argue

that some of the tasks that the interns performed are tasks

that are performed also by a paid employee, and to simply infer

from that that the interns are misclassified and should have

been paid to perform those tasks, that's not the way it works,

I think, and, as I say, I believe the test is minimal.

        I think it's a close question that it's appropriate to

go ahead and certify a collective action, and I thought about

whether or not this was minimally over that line, but I have

not been able to convince myself that it is minimally over the

line, and based on the bare allegations of three interns who

say that I did a number of tasks, not a number of jobs, a

number of tasks that were tasks that were included that would

be performed by paid employees, that in and of itself could

probably be said of any internship, and that's not a

E7gWmorC

1    determinative factor.  That doesn't make it a collective class.

2    There's got to be job function, that the company uniformly has

3    a policy and is executing that policy of having the intern

4    perform the job of paid individuals.  It can't simply be that

5    one day I did something that a paid employee does also.  And so

6    I think the allegations at this point are bare minimum and not

7    sufficient for me without some more substance to these

8    allegations to certify this as a class.

9             The reality is if this is all there is in terms of

10   proof and it's simply a repetitive set of allegations made by a

11   number of plaintiffs, I am not confident that this case would

12   ever be certified.  In my view, even if I had certified it, it

13   would probably be decertified.  This case needs more than this.

14   I don't have anything that is clearly on all fours with other

15   cases that have been certified.  There's the slightest of

16   factual allegations with regard to unpaid interns performing

17   job functions, and that's really what it comes down to, job

18   functions, to replace paid employees or in place of paid

19   employees.  I am not convinced that this case, based on these

20   allegations and the facts that have been alleged now, would put

21   this case in that category and, based on the facts as they're

22   alleged now, would sustain itself as a collective action for a

23   nationwide class of interns who would have a basis to argue

24   that they are similarly situated with other interns who are

25   doing the work of paid employees and not benefiting from the

E7gWmorC

1    education benefits of working there to the unbalanced benefit

2    of the company.

3              My position at this point is I'm going to deny the

4    motion and I'm going to deny it without prejudice.  I'll give

5    you as expedited or as up-front-loaded discovery in order to

6    make a firmer record that there is such a pattern that exists

7    here and will reconsider this at any point in time when you

8    feel that you have more factual allegations to support that to

9    renew the motion.  Although I am concerned about any delay, any

10   prejudice of any plaintiff's rights who may wish to opt in, I

11   think that it's early enough in this litigation, and in

12   balancing also what it to defendants to have this case

13   certified at this point in time, I think that I need a more

14   substantial showing of the likelihood of a misclassification of

15   a group of interns based on either some greater factual

16   allegations or some stronger inference or some direct evidence

17   that such a policy does exist and is being executed by the

18   company and in what manner I can define that as a commonality

19   among all plaintiffs, other than the only commonality that's

20   been identified now is that I was an intern and I did tasks

21   that employees do, so all of us are similar, even though we all

22   do different tasks and we all work different places and in

23   different jobs, that I'm to assume that the commonality is so

24   great that it demonstrates a uniform or common policy by SONY

25   to misclassify all interns as interns instead of employees

E7gWmorC

1   because they had a policy of using interns in place of a

2   worker.

3               I'm going to deny the motion at this point.  As I say,

4   you can renew the motion at any time.  I suggest that you do

5   some discovery to demonstrate that it really is something more

6   than the kinds of inferences that you want me to draw on this

7   minimal evidence or even minimal allegations.  And as I say, if

8   you wish to do some expedited discovery focused on that issue

9   or up-front discovery focused on that issue and renew it based

10  on a more substantive set of facts and allegations, then I will

11  allow you to do that.  But I think at this early stage simply

12  on these allegations alone, I think on the minimal affidavits

13  and evaluations that it does not meet the test that's required

14  to collectively certify this action at this time.

15              I wanted to just address the other case.  I'm going to

16  go ahead and finish reviewing the Brittany Fields case.  I will

17  give you a couple of minutes if you want to add something,

18  direct my attention to something with regard to the remand in

19  that case.  I must tell you that I'm particularly concerned

20  about the process that has gotten us to these two separate

21  cases, and I don't think that it is particularly compelling

22  that these are separate cases and should be in state court and

23  in federal court, given the significant overlap in the

24  allegations.  I think that even the plaintiffs' original

25  complaint was consistent with that because it was one case, and

E7gWmorC

obviously it's not the only reason, but the primary reason that
this case was separated and sent to state court was because the
named plaintiff was beyond the statute of limitations with
regard to the federal claim.  I read Judge Gardephe's opinion
that the parties refer to.  Quite frankly, my inclination is to
agree with Judge Gardephe.  I don't see that this meets the
test that's required for remand nor in the interest of justice,
that simply because these cases were separated to address that
issue, that there's something compelling about either this
being a local controversy or something compelling it otherwise
that would send this case back to state court.  The issue is,
quite frankly, two things.

          One, the plaintiffs in this case can't recover twice
and part of the class that you want, if not the significant
portion of the class, isn't involved in both cases, and the
issues with regard to whether or not these are exempt employees
or not exempt employees is exactly the same, and there's no
reason for that to be litigated in two different forums.  And
it seems to me that the plaintiff has not particularly
challenged the numbers that the defendant has come back with
when I asked specifically for the numbers, and even if I only
rely upon the numbers having to do with the employees who
worked in New York, it's a New York case, but it seems to me, I
believe the number was approximately 2,000 that worked in New
York, that it's my position that the amount of work that's

E7gWmorC

alleged by the plaintiffs taking that average, and there's no
reason for me to reduce those numbers, based on the allegations
and, plus, I agree with the courts that have indicated that
statutorily providing attorneys fees can also be a part of the
evaluation.  It seems to me that it meets the qualification
under the statute to be over the threshold to be in federal
court.  It was obviously already part of a federal court case
when it first started, and there is no compelling reason why
there should be two separate cases going on in two separate
forums that are to resolve primarily the same issues based on
the same set of facts and based on the same theory that these
individuals are employees and, therefore, would be entitled to
compensation under both state and federal law, to the extent
that they're not precluded by the statute of limitations.

        I see the strategic and tactical reasons for splicing
these cases, but I see no legitimate reason why one case should
be in federal court and the other case should be in state
court, if it meets the threshold with regard to the numbers,
and why there should be any possibility that any inconsistent
determination with regard to the central issue that is
determinative of both cases is whether or not the defendants
have liability based on their utilization in this
classification of interns when they should have been paid
employees, and that's going to decide both cases, and there's
no reason why it shouldn't decide both cases in the same forum.

E7gWmorC

And to the extent that damages are calculated and recovery or
class or subclass is designated or separate classes are
designated, it seems to me there's no real compelling reason to
push this back into the state court if the numbers are great
enough so that clear record of potential recovery by the
plaintiffs from the defendant, if the plaintiffs were to
prevail, the number of potential opt-out plaintiffs that Rule
23 class would put above the $5 million threshold in terms of
potential recovery, including the wages, penalties, and
attorney's fees, that would be recovered here, so my
inclination is to leave these cases here, both cases before me,
to coordinate the discovery, to make sure they both efficiently
move forward and to move forward to resolve this and determine
quickly whether or not classes should be certified and what the
nature of those classes are if they are to be certified, and
the issues of liability that are to be determined in both
cases.  And I think anything after that is simply a forum for
damages.

         My inclination, and I'll take one last look at it and
I'll hear from you if you want to add something else too, but
I've looked at the papers and I'll take one last look at it,
but my inclination at this point is to have this case remain
here, unless it appears to me that there's something that I've
overlooked with regard to evaluating this second case.

         Is there anything that you wanted to specifically

E7gWmorC

1    point my attention to with regard to this other case that you

2    think is particularly compelling, given the facts put before me

3    now, that should make this case go back to state court?

4         MS. LUSHER:  We'll just stand on our papers in

5    addition to remand, your Honor.  The only thing that I would

6    like to respectfully put before the Court is if your Honor's

7    inclined to have both cases here, if your Honor would possibly

8    entertain any kind of a tolling of the statute of limitations

9    for the FLSA plaintiffs simply because these motions are

10   brought early on before discovery is conducted with the hope

11   that notice will go out to give people time to opt in.

12        The one thing about this case that I think is slightly

13   different from some of the other overtime cases and things like

14   that, we have a longer statute of limitations.  It's the same

15   three-year statute of the limitations, but you have a longer

16   work period.  Generally, employees in other cases have worked

17   for longer periods of time.  It's the nature of internships

18   that individuals only work for a summer or a spring, a few

19   weeks here and there, and so their statute of limitations can

20   wind down fairly quickly.  If your Honor's inclined to have

21   those cases here and we start to conduct some precertification

22   discovery, that can also take time, and I would respectfully

23   request that the Court entertain possibly a tolling until we

24   were to file a motion again.

25        THE COURT:  My position is this.  I had considered

E7gWmorC

         1    that, but given the calculations, I don't think that much of

         2    the time, I'm not sure that there isn't significant time for

         3    most, if not all, plaintiffs to opt in still with regard to how

         4    recent this case has been brought and what period of time it

         5    covers, the FLSA case.  I'm not going to do anything with it

         6    now because I want to see a stronger record on this.  I am

         7    willing to reconsider that before the end of the year about

         8    whether or not we would toll it, if we haven't revisited the

         9    collective class.  But right now, I want to balance it.  I

        10    mean, although, as I say, I'm sympathetic to not having a

        11    party's action be prejudiced, there's also a factor that, look,

        12    these are affirmative claims by plaintiffs.  They can have an

        13    affirmative claim, they can bring such an action, and this is a

        14    collective action; once it's designated a collective action at

        15    that point in time, if they hadn't otherwise decided in a

        16    timely manner that they thought they individually had a suit,

        17    they could join the collective action.  But the bottom line is

        18    whether or not we revisit this or don't revisit this before the

        19    end of the year, I am willing to, at least within the next two

        20    or three months, depending on where we are and depending on

        21    what kind of progress you're making with discovery and where

        22    we're going, to consider at that point before the end of the

        23    year whether to toll the statute of limitations, whether there

        24    is a legitimate reason to do so.  But, quite frankly, you need

        25    to convince me, to give me more confidence in the claims and

E7gWmorC

1    the nature of the claims and that these claims really are going

2    to ultimately be able to overcome what I think are weaknesses

3    in the factual scenario and what it's perceived as.  I need a

4    little bit more than that and I'll revisit it, but, in the next

5    two, three months, if you want to reraise that issue, I'll

6    consider it, if you can articulate exactly why it's compelling

7    to do so and the other side can oppose it.  I won't foreclose

8    that possibility, but I'm not going to grant that application.

9              MS. LUSHER:  Fine.

10             THE COURT:  I'm going to schedule maybe another

11   conference.  Make some progress, see what you want to do up

12   front.  See if you want to do some further discovery on this

13   issue or whatever issues, whatever's efficient, and if you want

14   to renew the motion at some point in time, you can let me know

15   by letter and we can decide in what form you should do that,

16   whether you need to do a full-blown motion or just do a letter

17   application.  But otherwise let's see where we are.

18             I'm going to leave the October 2 date because I think

19   that was the date that we had already.

20             MS. LUSHER:  Correct.

21             THE COURT:  We'll do October 2 so we can get both

22   cases moving on the same track.

23             MS. LUSHER:  Okay.

24             THE COURT:  As I say, I'll look one last time at the

25   papers and then I'll issue orders consistent with this record,

E7gWmorC

1     unless my view changes.   Thank you.

2              MS. LUSHER:   Thank you.

3              MR. BATTEN:   Thank you.

4              (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25